# EXHIBIT C

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

---

KIMBERLY HAYWARD, JUSTIN PARKER,
DIANE PEACH, ABOUYEA THORNTON,
JESSICA WHITT, and SARAH YOHN,

                       Plaintiffs,

      v.                                               Index No.:

CATHOLIC HEALTH SYSTEMS,
MERCY HOSPITAL OF BUFFALO,
METZ CULINARY MANAGEMENT, INC.,
LISA ROBERT, and BILTON LANDS,

                       Defendants.

---

## **COMPLAINT**

        Plaintiffs, Kimberly Hayward, Justin Parker, Diane Peach, Abouyea Thornton, Jessica Whitt, and Sarah Yohn, by and through their attorneys, The Coppola Firm, for their complaint against defendants, respectfully state:

### **NATURE OF ACTION**

        1.      Kimberly Hayward, Justin Parker, Diane Peach, Abouyea Thornton, Jessica Whitt, and Sarah Yohn work or worked at Mercy Hospital of Buffalo, a Catholic Health System, Inc. ("CHS") hospital, in the Environmental Services Department ("EVS"), which is operated by Metz Culinary ("Metz"). Through its EVS management, including Lisa Robert ("Robert") and Bilton Lands ("Lands"), Metz and CHS have systematically harassed and discriminated against Black employees and retaliated against

the non-Black employees who stood up for their Black co-workers.  To make bad matters worse, Metz and CHS failed to train their employees on COVID-19 protocols, violated federal and state COVID-19 related mandates, and retaliated against their employees when the employees raised issues of non-compliance that affected the health and safety of patients, staff, and the public.

2.      At all relevant times, Robert and Lands regularly mocked, berated, threatened, and gave more difficult and dangerous work assignments to Black employees.

3.      Metz and CHS assigned only the Black second-shift EVS workers to clean the COVID rooms.  When Caucasian employees helped the Black employees, offered to help, or questioned why only the Black employees were assigned to the COVID rooms, they were not permitted to help and, instead, were fired or otherwise retaliated against.

## JURISDICTION AND PARTIES

4.      Kimberly Hayward ("Hayward") is a natural person residing in the Town of Cheektowaga, County of Erie, and State of New York.

5.      Justin Parker ("Parker") is a natural person residing in the City of Buffalo, County of Erie, and State of New York.

6.      Diane Peach ("Peach") is a natural person residing in the Town of West Seneca, County of Erie, and State of New York.

7.      Abouyea Thornton ("Thornton") is a natural person residing in the City of Buffalo, County of Erie, and State of New York.

8.      Jessica Whitt ("Whitt") is a natural person residing in the City of Lackawanna, County of Erie, and State of New York.

2

9.     Sarah Yohn ("Yohn") is a natural person residing in the City of Buffalo, County of Erie, and State of New York.

10.     Upon information and belief, at all times herein mentioned, Mercy Hospital of Buffalo ("Mercy") is a domestic not-for-profit corporation duly organized under the laws of the State of New York, and it maintains an office for the transaction of business in the County of Erie and State of New York.

11.     Upon information and belief, at all times herein mentioned, Catholic Health System, Inc., is a domestic not-for-profit corporation duly organized under the laws of the State of New York, and it maintains an office for the transaction of business in the County of Erie and State of New York.

12.     Upon information and belief, at all times herein mentioned, Metz is a foreign corporation authorized to transact business in the State of New York and is doing business in the County of Erie, State of New York.

13.     CHS and Metz are joint employers of EVS workers.

14.     At all relevant times, CHS and Metz were and are joint employers of plaintiffs herein.

15.     Robert is a natural person residing in the Village of East Aurora, County of Erie, and State of New York, and she is an employee of Metz.

16.     At all relevant times, Lands was a natural person residing in the Town of Tonawanda, County of Erie, and State of New York, and he is an employee of Metz.

## BACKGROUND FACTS AND CIRCUMSTANCES

17.     Hayward and Peach are CHS employees, working in EVS.

18.     Hayward and Peach report to a Metz supervisor on their shift.  That supervisor ultimately reports to Robert.

19.     Robert is a Metz employee.

20.     Thornton and Yohn are former CHS employees, who at all relevant times worked in EVS.

21.     Thornton and Yohn reported to a Metz supervisor on their shift.  That supervisor ultimately reported to Robert.

22.     Whitt is a former EVS employee working at CHS, but she was paid by Metz.

23.     Whitt reported to a Metz supervisor on her shift.  That supervisor ultimately reported to Robert.

24.     Whitt is a current CHS employee, working in a non-EVS role.

25.     At all relevant times, Parker was a Metz supervisor.  He reported to Robert.

26.     Hayward, Peach, Thornton, and Parker are Black.  As such, they are members of a protected class.

27.     CHS and Metz have a shared approach to hiring, managing, supervising, disciplining, and terminating EVS employees.

28.     CHS and Metz each employ various EVS workers.  For example, Whitt had the same job as Hayward and Peach, but Whitt was paid by Metz, and Hayward and Peach were paid by CHS.

29.     Metz employees supervise and manage all the EVS employees, some of whom are paid by Metz, while others are paid by CHS.

30.     Metz decides on work assignments for all EVS workers, including for those EVS workers who are paid by CHS.

31.     Metz decides on discipline for all EVS workers, including for those who are paid by CHS.

32.     Metz reports discipline and works through CHS human resources to discipline and terminate employees.

33.     Plaintiffs each have engaged in the protect activity of reporting race discrimination and harassment to supervisors at Metz, supervisors at CHS, human resources at CHS, and the union representing EVS workers.

34.     Hayward, Parker, Peach, Thornton, and Whitt engaged in the protected activity of filing complaints with the New York State Division of Human Rights ("DHR"), each of which was filed or cross-filed with the Equal Employment Opportunity Commission ("EEOC").

35.     Thornton engaged in the protected activity of filing a complaint with the EEOC.

36.     DHR has annulled each proceeding so that plaintiffs can bring this action in this Court, and EEOC has provided notices of right to sue for each plaintiff.


**Black Employees Are Bullied and Assigned Harder, More Dangerous Work**

37.     At all relevant times, Robert and Lands routinely assign Hayward and Peach more difficult work assignments in terms of volume and complexity.

38.     For example, among the hardest assignments are:

A.      working on the fifth floor of Mercy (which has four units, as compared with two units on all the other floors),

5

FILED: ERIE COUNTY CLERK 08/19/2021 11:35 AM          INDEX NO. 811552/2021
NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 08/19/2021

> B.      cleaning discharge rooms (when a patient leaves, a more thorough cleaning is required),
>
> C.      "stat" cleans (when rooms need to be cleaned quickly and thoroughly), and
>
> D.      cleaning of rooms where a patient positive for COVID-19 has been (for reasons that should be obvious, a deep clean compliant with state and federal laws, rules, regulations and guidance is required).

The Black employees, like Peach and Hayward, are assigned to these jobs, while the Caucasian EVS employees get easier cleaning assignments.

39.      Similarly, Thornton was assigned heavier or more strenuous work than the Caucasian EVS workers who did similar work.

40.      The discrimination against Hayward and Peach is so pervasive that some Caucasian employees have started ignoring requests to clean if they even sound like they might include the hard, less desirable work.  For example, in early 2021, while in Parker's presence, Caucasian employee Nicole Leonard responded to a cleaning request by pulling on her skin and saying, "I don't do that, see the color of my skin?"

41.      Hayward has worked for CHS since December 2018.  She has been routinely and consistently harassed, bullied, and discriminated against by defendants.

42.      Hayward made a complaint to CHS corporate compliance about race-based harassment.  As a result, she was moved from a desirable work assignment on "2 Main" to the "punishment floor," *i.e.,* the fifth floor.

43.      Defendants regularly berate, demean, and discipline Hayward.

44.      Hayward has a medical note that limits her ability to do heavy work as a result of a shoulder injury.  Despite this, and even when Hayward objects and says she is in pain, Hayward is required to do heavy lifting.

6

45.     Defendants honor the medical restrictions for Caucasian EVS employees.

46.     Hayward's mother was diagnosed with COVID and treated at Mercy. While at work, Hayward received word her mother was dying. Robert refused to permit Hayward to leave her work assignment to spend time with her mother. As a result, Hayward was not present for her mother's last moments of life.

47.     Defendants do not deny time away from work to Caucasian EVS employees.

48.     Peach has worked for CHS since July 2018. She has been routinely and consistently harassed, bullied, and discriminated against by defendants.

49.     Defendants regularly berate, demean, and discipline Peach.

50.     Robert has mocked Peach, laughing at her and calling her a "monkey."

51.     Lands has mocked Peach, calling her a "retard."

52.     Robert does not mock Caucasian employees.

53.     Lands does not mock Caucasian employees.

54.     Peach learned from Hospice on February 17, 2021 that her mother was dying. Peach called in to work prior to her shift and said that she needed the day off to be with her dying mother. Peach felt obligated to bring medical proof, so she brought a note in to Mercy later that same day. When she attempted to give the note to Robert, Robert said, "what do you want me to do with this?" and refused to take a note. Robert told Peach that this absence would need to be a "call off," which has disciplinary consequences. Peach's mother died that night.

55.     Similarly-situated Caucasian employees are permitted to spend time with dying family without disciplinary consequences.

56.     At all relevant times, even if there are Caucasian EVS employees available to clean COVID rooms, Lands will pull Black EVS workers from their other assignments to make them clean COVID rooms, because he does not assign Caucasian employees to the more dangerous COVID cleaning assignments.

57.     For example, in February 2021, Whitt had completed her work and was in the office.  An urgent request was received to clean a COVID room with two beds.  Hayward was cleaning a discharge room after a patient had left, which is a more intensive, lengthy process.  Despite Whitt's being available, Lands called Hayward and told her to go clean the COVID room.  Hayward explained that she was still cleaning her discharge room and had done COVID rooms all week, asking Lands to find someone else to clean the COVID room.  Lands refused.  Whitt offered to clean the room, but Lands would not permit her to do so, insisting that Hayward clean the COVID room.  When Lands left, Whitt went to help Hayward clean her rooms.

58.     Moreover, when confronted about being racist, Lands admitted that he was "entitled to his opinion."

59.     Lands harassed Black employee Thornton regularly until Lands and Robert made it impossible for Thornton to continue to work there.

60.     Whitt heard Lands on the phone talking about Thornton, saying, "I need to get that lazy Black motherfucker out of here."

61.     Other co-workers heard Lands refer to Thornton as a "lazy black ass."

62.     Lands followed Thornton around in an effort to intimidate him; Lands regularly followed Thornton on Thornton's breaks, pacing back and forth in front of him and watching his every move.

8

63. Lands threatened Thornton by following him around and tapping the knife Lands carries in his pocket when Lands passed or was nearby Thornton.

64. Lands did not harass or threaten Caucasian employees.

65. Thornton reported Lands' harassment to CHS human resources, to his supervisors, to the union that represents EVS employees, and to DHR.

66. Following Thornton's reports of harassment and discrimination, CHS and/or Metz falsified a document that made it appear Thornton signed up to work a shift he had not. When Thornton did not attend work for that shift, he was disciplined.

67. Following Thornton's reports of harassment and discrimination, in response to which Metz and CHS did nothing, Thornton separated from CHS on April 6, 2021, effectively being constructively discharged.

68. Parker and Lands are equals, and they both report to Robert.

69. Parker is Black, and Lands is Caucasian.

70. At all relevant times, Robert refused to directly talk to Parker because Parker is Black.

71. Instead, Robert gave instructions to Lands for Lands to convey to Parker.

72. Lands mocked Parker for being Black. For example, Lands has looked directly at Parker in a room full of people, opened a carton of chocolate milk, and while staring at Parker said, "I sure love some chocolate milk."

## Employees Who Oppose Racism And Racist Behavior Are Punished

73. Parker confronted Lands about being a racist, to which Lands responded that he (Lands) is entitled to his opinion.

9

FILED: ERIE COUNTY CLERK 08/19/2021 11:35 AM
NYSCEF DOC. NO. 2

INDEX NO. 811552/2021
RECEIVED NYSCEF: 08/19/2021

74.     At all relevant times, Parker opposed racist practices at CHS, and he tried to treat people fairly.

75.     Parker complained to Metz that Robert assigned the same few employees – all Black employees – to clean COVID rooms.

76.     Also, in March 2021, Parker gave a statement to the union that represents EVS workers stating that that Lands is racist and treats Black employees poorly.

77.     Robert schedules Parker on all holidays, while the Caucasian employees in Parker's role get holidays off.

78.     Parker's Caucasian counterparts each received pay raises, while Parker did not.

79.     In or around June 2021, Parker specifically asked Metz for a pay raise like his Caucasian counterparts already had received on multiple occasions.  Parker's request was denied.  Parker thereafter gave his two weeks' notice of separation, and his last day of work was July 9, 2021.

80.     Whitt and Yohn are not Black; they identify as Caucasian.

81.     Whitt and Yohn engaged in the protected activity of reporting racist and discriminatory conduct perpetrated by Lands, Robert, and Metz supervision to Metz management and to CHS.  As a result, they are members of a protected class.

82.     Whitt was hired by Metz to shortcut CHS's hiring process, but with the promise that she would become a CHS employee.

83.     At the time of Whitt's hire, Robert warned Whitt to "watch out" for Hayward because she "is trouble," and described Hayward to Whitt as "the older Black lady."

84.     At the time, Whitt did not understand this direction.  After a short time working for EVS at Mercy, however, Whitt observed that Hayward had the most difficult work assignments, including being assigned to the fifth floor, which has a great number of rooms to clean and has COVID rooms, which require considerably more time and effort to clean.

85.     Whitt often tried to assist Hayward when Whitt's work was done.  Whitt was berated by Lands and Robert for helping Hayward.

86.     Whitt also noticed that only the Black EVS workers on her shift were being assigned to COVID rooms.

87.     In or around November 2020, within weeks of her start date, Whitt began raising the issue of how Black employees were treated differently from Caucasian employees at Mercy.

88.     Whitt was supposed to be moved from being paid by Metz to being paid by CHS around the time she started raising racism and discrimination concerns.

89.     After Whitt made complaints about discriminatory treatment in EVS, Paul Polino, a Metz supervisor, advised Whitt that she would not be moved to the CHS payroll.

90.     Whitt inquired to Lands and Robert about why only Black employees on her shift were assigned to clean COVID rooms.  She was dismissed, berated, and ultimately fired.

91.     Lands told Whitt that "we do not clean COVID rooms," referring to Caucasians.

FILED: ERIE COUNTY CLERK 08/19/2021 11:35 AM INDEX NO. 811552/2021

NYSCEF DOC. NO. 2                                                      RECEIVED NYSCEF: 08/19/2021

92.     Robert became angry that Whitt was raising the issue of Black employees getting more difficult and less desirable assignments, so she directed supervisors Paul Polina and Parker to write statements disparaging Whitt so they could "nail her to the wall and get rid of her."

93.     Robert fired Whitt in April 2021.

94.     Yohn provided a statement confirming that only Black EVS workers were sent to clean COVID rooms.

95.     Thereafter, in or around February 2021, Yohn sought leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§2601-2654, to care for her dying mother.

96.     Yohn was improperly denied FMLA, and she was terminated in March 2021 while on a protected leave.

97.     Similarly-situated Caucasian employees are permitted FMLA leave.

### Employees Who Object to or Disclose Activities, Policies, and Practices that Constitute Improper Quality of Patient Care or Improper Quality of Workplace Safety Are Punished

98.     CHS and Metz failed to adequately train employees on COVID protocols.

99.     CHS and Metz violated the Occupational Safety and Health Act ("OSHA"), guidance and protocols from the federal Center for Disease Control ("CDC"), and other federal, state and local laws, rules, regulations, and guidance on COVID safety.

100.     Whitt, Hayward, and Peach all have raised concerns about COVID safety, and their complaints were and are ignored.

101.     For example, in December 2020, Whitt advised supervisors at Metz and CHS, CHS human resources, compliance, and the union that represents EVS workers that EVS

12

FILED: ERIE COUNTY CLERK 08/19/2021 11:35 AM
NYSCEF DOC. NO. 2

INDEX NO. 811552/2021

RECEIVED NYSCEF: 08/19/2021

workers did not have adequate training in COVID protocols, which she knew about from her previous jobs.

102.    In or around January 2021, Parker told Robert that there were no carts containing personal protective equipment ("PPE") near the COVID rooms, and therefore no available PPE to EVS workers, which was a violation of state and federal regulations and guidelines.  Despite Parker's complaints, PPE carts were never regularly available.

103.    Recently, Whitt, Hayward, and Peach have supplied photographs to their union to provide to the New York State Department of Health of disgusting, dangerous conditions in patient care areas that pose a threat to patients, visitors, and staff.  These photographs include purportedly "clean" rooms with blood dripping off beds, piled-up garbage, contaminated floors and surfaces, and maggots on the fifth floor of Mercy (5E), as pictured here:



104.    Starting in or around late March 2021, a Metz supervisor directed Peach and Hayward to clean COVID rooms immediately after a patient has been discharged.  Peach

13

FILED: ERIE COUNTY CLERK 08/19/2021 11:35 AM
INDEX NO. 811552/2021
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 08/19/2021

and Hayward both have repeatedly opposed this practice, identifying that COVID-related laws, rules or regulations mandate at least one hour needs to elapse before going in to clean a COVID room.  Nevertheless, Metz forced Peach and Hayward to clean COVID rooms without allowing the appropriate amount of time to elapse.  Nurses on the COVID units have cautioned them and told Peach and Hayward to report this direction because they were cleaning too soon after COVID patients were discharged, and it was an unsafe practice.  Peach and Hayward reported this issue to their union.

105.    Throughout the COVID-19 pandemic, Whitt, Hayward, and Peach have reported violations of OSHA, CDC, and federal, state and local laws, rules, regulations, and guidance on COVID safety.

106.    Throughout the COVID-19 pandemic, Whitt, Hayward, and Peach have objected to CHS and Metz's violations of OSHA, CDC, and federal, state and local laws, rules, regulations, and guidance on COVID safety.

107.    During the past year, Whitt, Hayward, and Peach all have told supervisors that CHS and Metz's COVID-19 safety violations place at risk public health and safety, patient care, and workplace safety.

108.    In or around May and June 2021, Whitt advised the union that CHS was permitting COVID-positive patients to be in the same room as patients who were not COVID positive, in violation of OSHA, CDC, and federal, state and local laws, rules, regulations, and guidance on COVID safety.

109.    In or around June and July 2021, Whitt has advised the union that Metz is permitting untrained individuals to clean COVID rooms, putting themselves and patients at risk.

## CONDITIONS PRECEDENT TO ACTION

110.    Plaintiffs repeat and reallege each and every allegation contained in the

foregoing paragraphs as though fully set forth herein.

111.    Plaintiffs have complied with all the jurisdictional prerequisites to this action

pursuant to § 706 of Title VII and 42 U.S.C. § 2000e-5(f) as follows:

A.  In compliance with the time prescribed by § 706(e) of Title VII and
    42 U.S.C. § 2000e-5(e), on or about March 16, 2021,
    Kimberly Hayward timely filed a charge of discrimination with DHR
    (Case No. 10211473), which was cross-filed the EEOC
    (Charge No. 16GC101477).

B.  In compliance with the time prescribed by § 706(e) of Title VII and
    42 U.S.C. § 2000e-5(e), on or about April 6, 2021, Justin Parker timely
    filed a charge of discrimination with DHR (Case No. 10212131),
    which was cross-filed the EEOC (Charge No. 16GC101926).

C.  In compliance with the time prescribed by § 706(e) of Title VII and
    42 U.S.C. § 2000e-5(e), on or about March 16, 2021, Diane Peach
    timely filed a charge of discrimination with DHR
    (Case No. 10211862), which was cross-filed the EEOC
    (Charge No. 16GC101741).

D.  In compliance with the time prescribed by § 706(e) of Title VII and
    42 U.S.C. § 2000e-5(e), on or about August 10, 2021,
    Abouyea Thornton timely filed a charge of discrimination with the
    EEOC (Charge No. 525-2021-01386).

E.  In compliance with the time prescribed by § 706(e) of Title VII and
    42 U.S.C. § 2000e-5(e), on or about March 16, 2021 and
    April 22, 2021, Jessica Whitt timely filed charges of discrimination
    with DHR (10211860, 10211925, and 10211926, respectively),
    which were cross-filed the EEOC (Charge No. 16GC101739,
    16GC101780, and 16GC101781, respectively).

F.  By letter received July 15, 2021, the EEOC sent notifications to
    Jessica Whitt and Diane Peach that they had the Right to Sue within
    90 days of the receipt of those notifications.

G.  The EEOC sent notifications to Hayward (received July 15, 2021),
    Peach (received July 15, 2021), Thornton (received August 19, 2021),
    Parker (received August 3, 2021), and Whitt (received

15

August 3, 2021) notifying them that they had the Right to Sue within 90 days of the receipt of those notifications.

H.  Yohn's claims sound in a violation of the FMLA and Human Rights Law violations, and there is no condition precedent to suit with which she must comply.

I.  All relevant plaintiffs have timely filed this action within 90 days of the receipt of their EEOC Right to Sue Notices.

## FIRST CAUSE OF ACTION

### Hayward, Parker, Peach, Thornton, Whitt and Yohn's Claims for Race Discrimination in Violation of New York Human Rights Law

112.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

113.    Defendants, by and through their agents, servants, and/or employees, treated plaintiffs adversely because of their race and/or engaging in the protected activity of reporting race discrimination.

114.    Defendants engaged in an unlawful, knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of the New York State Human Rights Law ("NYSHRL").

115.    The NYSHRL prohibits discrimination and disparate treatment by employers on the basis of race.

116.    Defendants' actions, conduct, and omissions, including but not limited to those described above, constitute unlawful race discrimination in violation of the NYSHRL.

117.    Defendants discriminated against and harassed Hayward, Peach, Thornton and Parker in the terms and conditions of their employment on the basis of their race, in violation of the NYSHRL.

16

FILED: ERIE COUNTY CLERK 08/19/2021 11:35 AM
NYSCEF DOC. NO. 2

INDEX NO. 811552/2021
RECEIVED NYSCEF: 08/19/2021

118.    Hayward and Peach have been humiliated and berated by defendants.

119.    Robert referred to Peach as a "monkey," a known racist trope.

120.    Hayward and Peach continue to receive inferior work assignments than their Caucasian counterparts.

121.    Parker has been harassed and tormented by defendants, called "chocolate milk," and told to "nail" Black employees and those who oppose discrimination "to the wall," so Robert can fire them.

122.    Robert refuses to speak with Parker directly, sending him directives through his Caucasian counterparts.

123.    Parker has an inferior schedule because he is Black.

124.    Parker did not receive pay raises that his Caucasian counterparts received.

125.    Thornton was repeatedly directly harassed by Lands and threatened by Lands touching his knife when in close proximity to Thornton.

126.    As a result of defendants' discrimination against Thornton, Thornton was unfairly disciplined and forced to separate from his position with CHS.

127.    Within a couple of weeks of starting her job, Whitt became vocal about the racism, harassment, and discrimination she observed.  Whitt made reports to supervisors, administration, and the union representing EVS workers.  As a result, Whitt was told she would not be able to get a permanent job at CHS.  Later, Metz terminated from Whitt from her job.

128.    Yohn gave a statement supportive of the Black EVS workers, confirming the discrimination and harassment they experienced.  As a result, she was fired for a pretextual reason.

17

FILED: ERIE COUNTY CLERK 08/19/2021 11:35 AM
NYSCEF DOC. NO. 2

INDEX NO. 811552/2021

RECEIVED NYSCEF: 08/19/2021

129.    Defendants knew their conduct was prohibited by the NYSHRL and/or showed reckless disregard for whether it was prohibited.  Defendants' unlawful actions by, among other things, engaging in this discriminatory behavior, not only has caused plaintiffs severe emotional distress, but has financially harmed them.

130.    Plaintiffs Hayward, Parker, Peach, Thornton, Whitt and Yohn, therefore, are entitled to damages under New York Executive Law § 297(4)(c).

131.    As a result of the foregoing, plaintiffs Hayward, Parker, Peach, Thornton, Whitt and Yohn proximately sustained damages in an amount that exceeds the jurisdictional limits of all lower courts that otherwise would have jurisdiction over this claim, and plaintiffs will seek money damages in an amount to be proven and determined at the time of trial, together with equitable relief.

## SECOND CAUSE OF ACTION

### Hayward, Parker, Peach, Thornton and Whitt's
### Claims For Race Discrimination in Violation of Title VII

132.    Plaintiffs Hayward, Parker, Peach, Thornton and Whitt repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

133.    Defendants, by and through their agents, servants, and/or employees, treated plaintiffs adversely because of their race and/or engaging in the protected activity of reporting race discrimination.

134.    Defendants engaged in an unlawful, knowing, intentional, willful, and voluntary course of wrongful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

18

FILED: ERIE COUNTY CLERK 08/19/2021 11:35 AM
INDEX NO. 811552/2021
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 08/19/2021

135.    Title VII prohibits discrimination and disparate treatment by employers on the basis of race.

136.    Defendants' actions, conduct, and omissions, including but not limited to those described above, constitute unlawful race discrimination in violation of the Title VII.

137.    Defendants discriminated against plaintiffs Hayward, Parker, Peach, Thornton and Whitt with respect to the terms, conditions, and privileges of employment constituting unlawful race discrimination in violation of Title VII, and plaintiffs entitled to damages under 42 U.S.C. § 1981a.

138.    As a result of the foregoing, plaintiffs Hayward, Parker, Peach, Thornton and Whitt proximately sustained damages in an amount that exceeds the jurisdictional limits of all lower courts that otherwise would have jurisdiction over this claim, and plaintiffs will seek damages in an amount to be proven and determined at the time of trial, together with equitable relief.

## THIRD CAUSE OF ACTION

### Hayward, Parker, Peach, Thornton, Whitt, and Yohn's Claims of Retaliation in Violation of New York Human Rights Law

139.    Plaintiffs Hayward, Parker, Peach, Thornton, Whitt, and Yohn repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

140.    These plaintiffs engaged in protected activities when they reported race discrimination to supervisors at CHS, supervisors at Metz, human resources, the union, and DHR.

19

FILED: ERIE COUNTY CLERK 08/19/2021 11:35 AM          INDEX NO. 811552/2021

NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 08/19/2021

141.    After making protected complaints of harassment and discrimination, plaintiffs suffered increased harassment and discrimination and inferior terms and conditions of their work.

142.    After making protected complaints of harassment and discrimination, Thornton was constructively discharged and Whitt was and Yohn were terminated from their jobs.

143.    After making such complaints and filing such charge of discrimination, Hayward and Peach were berated, disciplined, harassed, falsely reported to human resources, and denied leave to being with their dying family members.

144.    After making such complaints and filing such charge of discrimination, Parker was denied holidays off, denied pay raises that his counterparts received, and harassed by Robert.

145.    As a result of the foregoing, plaintiffs Hayward, Parker, Peach, Thornton, Whitt and Yohn proximately sustained damages in an amount that exceeds the jurisdictional limits of all lower courts that otherwise would have jurisdiction over this claim, and plaintiffs will seek damages in an amount to be proven and determined at the time of trial, together with equitable relief.

## **FOURTH CAUSE OF ACTION**

### **Hayward, Parker, Peach, Thornton and Whitt's**
### **Claims of Retaliation in Violation of Title VII**

146.    Plaintiffs Hayward, Parker, Peach, Thornton and Whitt repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

FILED: ERIE COUNTY CLERK 08/19/2021 11:35 AM

NYSCEF DOC. NO. 2

INDEX NO. 811552/2021

RECEIVED NYSCEF: 08/19/2021

147.     These plaintiffs engaged in protected activities when they made complaints about race discrimination to their supervisors, to CHS human resources, to their union, and to the New York State Division of Human Rights.

148.     After making such complaints and filing such charge of discrimination, Thornton was constructively discharged and Whitt was fired.

149.     After making such complaints and filing such charge of discrimination, Hayward and Peach were berated, disciplined, harassed, falsely reported to human resources, and denied leave to being with their dying family members.

150.     After making such complaints and filing such charge of discrimination, Parker was denied holidays off, denied pay raises that his counterparts received, and harassed by Robert.

151.     These actions are retaliatory and in violation of Title VII.

152.     As a result of the foregoing, plaintiffs Hayward, Parker, Peach, Thornton and Whitt proximately sustained damages in an amount that exceeds the jurisdictional limits of all lower courts that otherwise would have jurisdiction over this claim, and plaintiffs will seek damages in an amount to be proven and determined at the time of trial, together with equitable relief.

## FIFTH CAUSE OF ACTION

### Retaliation Against Hayward, Peach, and Whitt
### in Violation of New York State Labor Law §§ 740 and 741

153.     Jessica Whitt, Diane Peach, and Kimberly Hayward repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

21

FILED: ERIE COUNTY CLERK 08/19/2021 11:35 AM          INDEX NO. 811552/2021
NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 08/19/2021

154.    New York Labor Law § § 740 and 741 makes it unlawful to retaliate against any employee who discloses to a supervisor an activity, policy or practice of the employer or agent that she, in good faith, reasonably believes constitutes improper quality of care or violation of workplace safety, or objects to participating in that activity.

155.    Defendant CHS is an employer within the definition of New York Labor Law § 740.

156.    Defendant Metz is an employer within the definition of New York Labor Law § 740.

157.    Defendant CHS is a health care employer within the definition of New York Labor Law § 741.

158.    Defendant Metz, through its affiliation with CHS, is a health care employer within the definition of New York Labor Law § 741.

159.    Whitt, Peach, and Hayward are employees within the definition of New York Labor Law § 740.

160.    Whitt, Peach, and Hayward are employees within the definition of New York Labor Law § 741.

161.    As EVS workers in a hospital, Whitt, Peach, and Hayward performed and supplied health care services.

162.    Defendants took adverse employment action against Whitt, Peach, and Hayward because they complained and objected to the lack of staffing for COVID-19 cleaning, failure to comply with state, local, and federal COVID-19 safety regulations and guidance.

22

FILED: ERIE COUNTY CLERK 08/19/2021 11:35 AM          INDEX NO. 811552/2021
NYSCEF DOC. NO. 2                                           RECEIVED NYSCEF: 08/19/2021

163.    Defendants took adverse employment action against Whitt, Peach, and Hayward because they complained of defendants' failure to comply with standards, rules, regulations and/or laws.

164.    Whitt, Peach, and Hayward made these complaints and objections to supervisors at Metz and CHS, CHS human resources, CHS compliance, and the union that represents EVS.

165.    Whitt, Peach, and Hayward gave defendants adequate time to respond to their complaints, but defendants failed to take action to comply with COVID-19 safety guidelines and regulations.

166.    Whitt, Peach, and Hayward also complained about inadequate staffing in EVS that prohibits them from thoroughly cleaning in compliance with COVID-19 guidelines.

167.    By identifying defendants' COVID-19 safety failures issues, Whitt, Peach, and Hayward reported inherently-dangerous practices that were ongoing and liable to recur, presenting a substantial and specific danger to public health or safety.

168.    Whitt, Peach, and Hayward have objected to and/or refused to participate in these practices and reasonably believed that the practices presented a substantial and specific danger to public health or safety.

169.    Whitt has been fired in retaliation for her engagement in these protected activities.

170.    Peach and Hayward have been discriminated against, given worse assignments, disciplined, and are routinely berated because they engaged in these protected activities.

FILED: ERIE COUNTY CLERK 08/19/2021 11:35 AM
NYSCEF DOC. NO. 2

INDEX NO. 811552/2021
RECEIVED NYSCEF: 08/19/2021

171.    Defendants' violations of laws, statutes, regulations, and/or guidelines promulgated thereunder created a substantial and specific danger to the public safety.

172.    Defendants did not take any action to remedy their violations, even though Whitt, Peach, and Hayward afforded them adequate time to make corrections.

173.    The aforementioned activities and practices each created a substantial and specific danger to the public.

174.    Whitt, Peach, and Hayward, therefore, are entitled to damages under New York Labor Law §§ 740 and 741.

175.    As a result of the foregoing, Whitt, Peach, and Hayward proximately sustained damages in an amount that exceeds the jurisdictional limits of all lower courts that otherwise would have jurisdiction over this claim, and Whitt, Peach, and Hayward will seek damages in an amount to be proven and determined at the time of trial, together with equitable relief.

## SIXTH CAUSE OF ACTION

### FMLA Violations Claim of Sarah Yohn

176.    Yohn repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

177.    Yohn informed her employer that her mother's physician directed her to take leave from work due to her mother's declining health given her stage 5 kidney disease, vascular health, and liver disease, each of which constitutes a "serious health condition" under the FMLA.

178.    FMLA provides for job-protected leave.

24

FILED: ERIE COUNTY CLERK 08/19/2021 11:35 AM

NYSCEF DOC. NO. 2

INDEX NO. 811552/2021

RECEIVED NYSCEF: 08/19/2021

179.   Yohn was qualified for her position.

180.   CHS failed to grant Yohn FMLA leave after receiving adequate documentation from Yohn.

181.   CHS claimed that it did not have correct paperwork from Yohn and told her she had until April 2021 to submit her FMLA paperwork, but CHS fired Yohn on March 1, 2021 for time and attendance issues.

182.   CHS terminated Yohn while she was out on what they knew was FMLA leave.

183.   CHS's termination of Yohn while she was out on FMLA leave was done intentionally to violate her FMLA rights or with reckless disregard for her FMLA rights.

184.   By doing so, CHS willfully retaliated against Yohn for her use of FMLA leave.

185.   Yohn suffered significant financial harm as a consequence of CHS's retaliation against her for the exercise of her rights under the FMLA.

186.   As a result of the foregoing, Yohn proximately sustained damages in an amount that exceeds the jurisdictional limits of all lower courts that otherwise would have jurisdiction over this claim, and Yohn will seek damages in an amount to be proven and determined at the time of trial, including back pay, front pay, liquidated damages, actual costs, and attorneys' fees to Yohn.

**WHEREFORE**, plaintiffs demand judgment against the defendants, jointly and severally, in an amount no less than $2,000,000.00, for the equitable relief of a temporary, preliminary, and/or permanent injunction to protect plaintiffs, their coworkers, patients, and the general public, and for such other, further or different relief as the Court may deem

FILED: ERIE COUNTY CLERK 08/19/2021 11:35 AM          INDEX NO. 811552/2021

NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 08/19/2021

just and proper, together with attorneys' fees and the costs and disbursements of the

action.


Dated:  August 19, 2021
        Buffalo, New York


                              **THE COPPOLA FIRM**
                              Attorneys for Plaintiffs


                              By: _____
                                    Lisa A. Coppola, Esq.
                                    Jennifer R. Scharf, Esq.
                                    3960 Harlem Road
                                    Buffalo, New York  14226
                                    (716) 839-9700
                                    Email: lcoppola@coppola-firm.com
                                           jscharf@coppola-firm.com